NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Mohamad Abdulaal,         :

          Petitioner,    :

            v.         :

UNITED STATES OF AMERICA,  :

         Respondent.    :

**Hon. Dennis M. Cavanaugh**

# OPINION

Civil No. 09-4153(DMC)
Crim. No. 06-525 (DMC)

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon *pro se* Petitioner Mohamad Abdulaal's ("Petitioner") motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on three grounds—ineffective assistance of counsel during the plea negotiation process, ineffective assistance of council after plea negotiations up until sentencing, and that the appellate waiver contained in the plea agreement is unenforceable, invalid, and inapplicable. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. The Court has reviewed the submissions of the parties, and for the reasons set forth below, Petitioner's request for relief is **denied**.

## I.  FACTUAL BACKGROUND[1]

      Petitioner, Mohamad Abdulaal, was involved in an ongoing "Credit Card Bust-Out" scheme between 1999 and 2002. This type of scheme involves the procurement of stolen and fictitious credit cards, and the using of those cards to make fraudulent purchases. Throughout this scheme, Petitioner, and others, defrauded victims of more than $1 million. For his involvement in this

---

[1] The facts in the Background section have been taken from the parties' submissions.

scheme, Petitioner was charged in a two-count Information with credit card fraud, in violation of 18 U.S.C. § 1029(a)(5), and conspiracy to commit credit card fraud, in violation of 18 U.S.C. § 1029(b)(2).  On April 4, 2006, Petitioner executed a Plea Agreement in which he agreed to plead guilty to the two-count Information, in exchange for the Government's sentencing concessions and its promise not to initiate further criminal charges against him relating to the "Credit Card Bust-Out" scheme.  There are thirteen stipulations in the Plea Agreement.  Resp't's Answer Ex. A at 6–8. The stipulations discuss the Sentencing Guidelines, determine Petitioner's offense level under the guidelines, and outline the parties' post-sentencing rights. Id.

Stipulation #1 notes that the Sentencing Guidelines are not binding on the Court and reflects the agreement of the parties that the Court should sentence Petitioner within the Guidelines range that corresponds with Petitioner's offence level. Id. at 6, ¶ 1.  Stipulations numbered Two thru Eight (2–8) reflect the process by which Petitioner's total offense level was calculated. Id. at 6–7, ¶¶ 2–8.[2] Stipulations Nine and Eleven (9 & 11) establish the Petitioner's total offense level at 25 and set forth that a sentence within the Guideline's range for this offense level is reasonable.  Stipulations numbered Ten, Twelve and Thirteen (10, 12 & 13) relate to additional rights the parties reserved and waived.  Specifically, Petitioner's Plea Agreement included a "Waiver of Appeal and Post-

---

[2]

Petitioner now attacks Stipulation #5 arguing that the stipulation does not apply to his criminal behavior and therefore the stipulation is inapplicable and unenforceable. Discussed infra, Part II.B, Stipulation #5 from the Plea Agreement provides:

> 5. Specific Offense Characteristic 2B1.1(b)(9)(c) applies because the offense involved (i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification; or (ii) the possession of five or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification.  This Specific Offense Characteristic results in an increase of 2 levels.

Resp't's Answer Ex. A at 6, ¶ 5.

Sentencing Rights."[3]  The Waiver section of the Plea Agreement established that the Government

and Petitioner Abdulaal "waive certain rights to file an appeal . . . including but not limited to . . .

a motion under 28 U.S.C. § 2255."  Resp't's Answer Ex. A at 3–4.  Stipulation #12 of the Plea

Agreement provides:

> 12.  Mohamad Abdulaal knows that he has and, except as noted below in this
> paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or
> any other writ or motion, including, but not limited to an appeal under 18 U.S.C. §
> 3742 **or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed
> by the sentencing court if that sentence falls within or below the Guidelines
> range that results from the agreed total Guidelines offense level of 25.**

Id. at 7-8, ¶ 12 (emphasis added).

The Sentencing Guideline range for an offense level 25 was 63 to 78 months.  Petitioner was

sentenced to 70 months imprisonment.  Despite the Plea Agreement Waiver, Petitioner now asks this

Court, by way of 28 U.S.C. § 2255 "to vacate, set aside, or amend his conviction and/or sentence of

January 22, 2007."  Pet'r's Mem. in Supp. of Mot. for Relief Pursuant to 28 U.S.C. § 2255 at 1.  In

making this request, Petitioner makes three arguments.  First, Petitioner argues that "the scope of the

waiver does not preclude" the challenges raised in the instant proceeding.  Id. at 4.  Second,

Petitioner argues that ineffective assistance of counsel, particularly with regards to Stipulation #5,

"tainted his knowing, voluntary, and intelligent acceptance of the waiver." Id. at 25.  And third,

---

[3]

Both Petitioner's Section 2255 Motion and Respondent's Answer reference a separate and prior
conviction for conspiracy to commit bank fraud.  While this prior conviction has no bearing on the
matter at hand, it is worth noting that Petitioner previously appealed the current conviction arguing
that the Court should have "grouped" the charges from the previous conviction for conspiracy to
commit bank fraud with the current conviction relating to credit card fraud.  In addition, Plaintiff's
previous appeal challenged the constitutionality of charging the offenses separately.  The previous
appeal did not challenge the Guidelines enhancements in his Plea Agreement or any other aspect of
his plea, Plea Agreement, or waiver of appellate and Section 2255 rights.  The Government moved
for a summary dismissal of Petitioner's appeal on the basis of the unambiguous appellate waiver in
his plea agreement.  The Third Circuit granted that motion and summarily dismissed the appeal.

Petitioner argues that even if the waiver is enforceable, valid, and applicable to this Section 2255

motion, "enforcing the waiver would result in a miscarriage of justice." Id. at 25.

The Government contends that "Petitioner's Plea Agreement was unconditional, and did not

reserve the right to appeal any pre-trial issues." Res't's Answer at 4. The Government argues that

Petitioner's Section 2255 motion should be dismissed outright because "Petitioner knowingly and

voluntarily waived his right to attack his guilty plea and sentence." Id. at 6. Even if this Court

allows Petitioner's challenges, the Government argues that the motion should be dismissed because

the Petitioner cannot prove his claim of ineffective assistance of counsel. Id.

## II. DISCUSSION

### A.    Waiver of Right to Collateral Attack

"Criminal defendants may waive both constitutional and statutory rights, provided they do

so voluntarily and with knowledge of the nature and consequences of the waiver." United States v.

Mabry, 536 F.3d 231, 236 (3d Cir. 2008). "The right to appeal in a criminal case is among those

rights that may be waived." Id. Waivers of this type benefit the defendant, government and court

system, and do not violate public policy. Id. at 237. Accordingly, courts are "willing to enforce such

waivers, provided that they are entered into knowingly and voluntarily and their enforcement does

not work a miscarriage of justice." Id. In order to determine whether enforcing a waiver will result

in a miscarriage of justice, a court may consider "[t]he clarity of the error, its gravity, its character

(e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact

of the error on the defendant, the impact of correcting the error on the government, and the extent

to which the defendant acquiesced in the result." United States v. Khattak, 273 F.3d 557, 563 (3d

Cir. 2001).

The record is replete with evidence that Petitioner agreed and signed the Plea Agreement both

knowingly and voluntarily. Petitioner was an experienced and educated business owner who was represented by competent counsel throughout the plea negotiations; this was not Petitioner's first federal criminal plea; and the level of sophistication in Petitioner's *pro se* filings with this Court are further evidence of his cognitive ability to understand the scope of the legal documents he signed. Furthermore, the language from the actual Plea Agreement which Petitioner signed is explicit. The Plea Agreement reads in part, "Mohamad Abdulaal **knows** that he has and, except as noted below in this paragraph, **voluntarily** waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255 . . .." Resp't's Answer Ex. A at 7-8, ¶ 12 (emphasis added). Further still, Petitioner was questioned by this Court extensively as to the Plea Agreement, including whether Petitioner understood it, whether Petitioner's counsel had explained it, whether Petitioner had voluntarily and knowingly signed it, and whether he was compelled or induced to enter it.

Having knowingly and voluntarily signed the Plea Agreement, Petitioner argues that the waiver is limited in scope. He argues that while he waived certain rights with regards to his ability to appeal the sentence, he did not waive his ability to challenge his sentence and conviction based on a claim of ineffective assistance of counsel. Petitioner invokes contract interpretation principles to argue that "[t]he waiver's plain language provides no explicit or implied prohibitions against constitutional challenges, based on the ineffective assistance of counsel, to [Petitioner's] conviction, the plea agreement or any provision thereof, or the plea negotiation process." Pet'r's Mem. in Supp. of Mot. for Relief Pursuant to 28 U.S.C. § 2255 at 13. Petitioner emphasizes comma placement and syntax issues when making this argument, and argues that in cases of ambiguity, the ambiguities must be read against the drafting party.

However creative this argument may be, it lacks merit. The language of the Plea Agreement

is unambiguous.  Petitioner's Plea Agreement was unconditional and the explicit waiver precludes him from bringing the instant motion.  Not only did Petitioner voluntarily sign the plea agreement expressly waiving all his rights to collaterally attack his sentence, but he also acknowledged at the plea hearing that he understood the consequences of his waiver.  Petitioner knowingly and voluntarily waived his right to appeal his sentence, and nothing in the record suggests that enforcing this waiver will result in a "miscarriage of justice." Therefore, the waiver provision of the plea agreement will be enforced, and Petitioner is unable to collaterally attack his sentence..

**B.     Ineffective Assistance of Counsel**

In light of the constitutional implications of Petitioner's ineffective assistance of counsel claim, the Court will address Petitioner's arguments even though it has already determined that Petitioner waived any right to bring such a challenge.  For the foregoing reasons, Petitioner's claim fails.

In order to succeed on an ineffective assistance of counsel argument, Petitioner must meet both prongs of the test articulated in Strickland v. Washington, 466 U.S. 668, 687 (1984).  Petitioner must first demonstrate that his attorney's performance was deficient, by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.  More specifically, "[a] constitutionally deficient performance is one that falls 'outside the wide range of professionally competent assistance.'" Arroyo-Angulo v. United States, 961 F.Supp. 698, 700-01 (D.N.J. 1997) (quoting Strickland, 466 U.S. at 690).  Next, Petitioner must show that he was prejudiced by that deficient performance.  To demonstrate such prejudice, Petitioner must show "that counsel's errors were so serious as to deprive the [Petitioner] of a fair [proceeding] . . . whose result is reliable." Strickland, 466 U.S. at 687.  "Prejudice from deficient performance is shown where: 'there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.'" Arroyo-Angulo, 961 F.Supp. at 701 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

"The burden of proof rests with the [P]etitioner" to satisfy both prongs of the test. Arroyo-Angulo, 961 F.Supp. at 701 (citing McNeil v. Cuyler, 782 F.2d 443, 448 (3d Cir. 1986), cert. denied, 479 U.S. 1010 (1986)). This burden is not met where a petitioner presents only "vague and conclusory allegations...Rather, he must set forth facts to support his contention." Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991). The Strickland test "applies both to convictions after trial as well as to convictions based upon guilty pleas entered by defendants." Manzo v. United States, 2009 WL 2365989, at *2 (D.N.J. July 31, 2009) (citing Strickland, 466 U.S. at 687). Finally, courts must be highly deferential in evaluating the performance of counsel due to the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

In the instant case, Petitioner's argument that his attorney rendered ineffective assistance while negotiating the Plea Agreement and up to and during sentencing is without merit. Petitioner argues that his attorney was ineffective with regards to advising Petitioner that Stipulation #5[4] was both appropriate and required under the Sentencing Guidelines. Essentially Petitioner argues that this particular stipulation did not apply to him, he told his attorney this, and because his attorney did

---

[4]Stipulation #5 from the Plea Agreement provides:

Specific Offense Characteristic 2B1.1(b) (9) (C) applies because the offense involved (i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification that unlawfully were produced from, or obtained by the use of, another means of identification. This Specific Offense Characteristic results in an increase of 2 levels.

Resp't's Answer Ex. A at 6, ¶ 5.

nothing about the issue his sentencing level was increased by two.  Such conduct cannot be construed as rendering of ineffective assistance of counsel, particularly where Petitioner stated under oath that he understood the terms of the plea agreement and entered into it voluntarily.[5]  Petitioner cannot satisfy the first prong of the <u>Strickland</u> test.

Even if Petitioner's groundless allegations indicated that his counsel's performance was somehow deficient, the evidence does not indicate that Petitioner was prejudiced by any failure on the part of his attorney to address this concern.  As the record makes abundantly clear, this Plea Agreement represents the culmination of a protracted negotiation between the Petitioner, Petitioner's Counsel, and the Government.  In fact, Petitioner reaped the benefit of this bargain.[6]  Petitioner has,

---

[5]Of particular significance is the following exchange between Petitioner and the Court:

THE COURT: I would now ask your attorney to show you what's been identified as the written plea agreement, and I would direct your attention to the last page or thereabouts and the signature directly above your typewritten name.
Is that your signature?
THE DEFENDANT: Yes, it is mine.
. . .
THE COURT: Did you read it before you signed it?
THE DEFENDANT: Yes, sir.
. . .
THE COURT: Does that document set forth the complete plea agreement as you understand it?
THE DEFENDANT: Yes, sir.
THE COURT: Does it omit anything or leave anything out of the plea agreement as you understand it?
THE DEFENDANT: No, I'm sure it's everything that I understood.
THE COURT: Before you signed that document, did you confer with your attorney?
THE DEFENDANT: Yes.
THE COURT: Did he answer all of your questions about the document and explain its purpose to you?
THE DEFENDANT: Yes, he did.

Resp't's Answer Ex. B at 9–10.

[6]The agreement between the Government and Petitioner stipulated the loss amount to be no more than $2.5 million.  Despite a presentence finding that the loss amount exceeded this

therefore, failed to show that his attorney rendered ineffective assistance of counsel within the meaning of Strickland.

### III.  CONCLUSION

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 18 U.S.C. § 2255 is **denied.**

S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        June   7 , 2011
Original:    Clerk
cc:          All Counsel of Record
             File

---

amount and should have resulted in a total offense level of a 27, the parties stipulated and the Court agreed that the bargain was a total offense level of 25.  This is strong evidence of the bargain the parties made.